Filed 11/17/21  In re A.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.P., Defendant and Appellant. | E077197 (Super.Ct.Nos. J275382, J275383) OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

This is mother's second appeal, this time from a postjudgment denial of a Welfare and Institutions Code section 388 petition. Mother has had open juvenile dependency cases involving her children since shortly after her second child tested positive for amphetamines at birth. She has struggled to maintain sobriety since then.

Mother filed two change-in-circumstance petitions in 2020, and the juvenile court judge denied both petitions. The judge ordered a permanent plan of concurrent placement for the older two children, who were not deemed adoptable, and the department placed them in a concurrent home in September 2020. In February 2021, the judge terminated mother's parental rights over the youngest child and ordered adoption as his permanent plan. We affirmed those decisions by opinion dated September 22, 2021.

After mother appealed those orders, the older children were placed in a potential adoptive home, and the trial judge issued a new order setting a section 366.26 hearing. Mother filed a third change-in-circumstances petition to modify that order. The trial judge denied the petition without a hearing and at the section 366.26 hearing found the children adoptable, ordered adoption as their permanent plan, and terminated mother's parental rights. Mother argues the judge abused his discretion because she had a prima facie case of changed circumstances and that further efforts of reunification would be beneficial for her two older children. We conclude the judge didn't abuse his discretion and therefore affirm.

# I

# FACTS

We take the facts from our opinion in mother's prior appeal. (*In re A.R.* (Sept. 22, 2021) E076353 and E076815 [2021 WL 4273004].) We omit facts related to her younger child, whose custody is not the subject to this appeal, except where necessary for background. We add facts in part I.E. *post* about the events she cites as demonstrating changed circumstances that support her third request for a change in the order and additional reunifications services.

## A. *Dependencies of the Two Older Siblings*

In November 2017, mother gave birth to her second child, and both mother and daughter tested positive for amphetamine. Mother told the social worker she had started using methamphetamine in May 2015 and admitted she had smoked methamphetamine two days before giving birth. She told the social worker she had an autistic seven-year-old child living with her as well.

The maternal grandmother told the social worker mother had recently moved into her home. She said she was aware of mother's past drug use but believed she had stopped using drugs. She said the older sibling wasn't in school because he was being transferred to a school closer to home. After a meeting involving San Bernardino Child and Family Services (department) social workers, mother, the younger child's father,[1] and the maternal grandparents, the department placed the family under a voluntary family

---

[1] Father is not a party to this appeal, so we have left out facts related to his parental rights.

maintenance plan, which included an agreement that mother would submit to random drug testing and enroll in a perinatal program. However, mother then forged a document claiming she completed a substance abuse treatment program and continued to use methamphetamine, so the department removed the two children from mother's care.

On March 26, 2018, the department filed section 300 petitions on behalf of both children based on mother's drug use. The juvenile court judge, San Bernardino County Superior Court Judge Steven Mapes, ordered the children detained on March 27, 2018.

In their jurisdiction/disposition report, the department recommended sustaining the petitions and ordering family reunification services for mother. The department reported mother had admitted to using methamphetamine from November 2017 through February 2018, during her pregnancy with the younger child. She said she had started using methamphetamine about once a week and eventually increased to using daily. Mother had been dropped from an outpatient substance abuse program, and she was trying to enroll in another one. The social worker attempted to speak with the older child, but he struggled to answer even simple questions.

The children were placed together in foster care. They were adjusting well in their placement and responded positively to their foster caregiver. During a supervised visit, the older child appeared happy to see mother. She tried to engage him in conversation and play, but he spent most of his time playing alone. The social worker described mother as attentive and said she had good interactions with the children.

At a jurisdiction/disposition hearing, the juvenile court sustained the section 300 petitions and ordered reunification services for mother. But in their six-month status review report, the department recommended terminating reunification services and setting a section 366.26 hearing to establish a plan of adoption. Mother had been referred to drug treatment programs four times and had been unsuccessful in completing any of them. She was terminated from two outpatient programs for continuing to test positive for substances and for nonattendance. She also left an inpatient drug treatment program after three days. She had recently started another outpatient drug treatment program and had completed several sessions of individual counseling and parenting education classes. She was also pregnant and due to give birth to a third child in April 2019.

Mother did regularly attend visits with the children, which were supervised by the caregiver. The caregiver reported mother was engaging and appropriate with the younger child. However, she would give the older autistic child her cell phone at the beginning of visits, and he would spend most of the time on the device. Mother also brought other family members, usually around the older child's age, and they would engage with the older child while she was engaged with the younger child.

The department later updated their report to inform the court mother was at risk of being terminated from her substance abuse treatment program for failing to attend. She had missed eight sessions in three months and was put on a behavioral contract for sporadic attendance and testing positive for methamphetamine. She tested negative for drugs in September and October 2018, but then tested positive on November 15, missed

an appointment, and tested positive again on November 28. She then missed three later appointments. Mother's therapist also reported her attendance had been sporadic. She did, however, continue to regularly attend all of her visits with the children.

At the contested six-month review hearing, the judge found mother had failed to participate regularly or make substantive progress in her reunification plan. He then terminated reunification services and set the section 366.26 hearing for both children.

In their section 366.26 report, the department recommended the children receive services under a plan of permanency planning living arrangement with a goal of adoption. The children's caregivers weren't interested in adopting them but were willing to continue to provide care until a concurrent planning home could be located. The caregivers reported the older child's behavioral issues and communication had improved but that he would likely require ongoing services based on concerns about autism. Mother continued to visit the children, but the visits occurred at her inpatient drug treatment program. The caregiver reported mother engaged very little with the older child, who would watch television by himself. Mother did engage with the younger child and would walk around the room with her and play games with her.

On April 4, 2019, mother filed a section 388 petition requesting the children be returned to her care and her parental rights not be terminated. She said she had completed an inpatient substance abuse program, was living in transitional housing, and had enrolled in an outpatient substance abuse program. The court ordered an evidentiary hearing on the section 388 petition. The department recommended the juvenile court judge grant her

petition and offer her reunification services. The social worker reported mother took responsibility for the children being removed from her care. She said she had used methamphetamine with father and said he triggered the relapse by cheating on her. She recognized she was codependent and knew she had to keep her distance from him.

On April 11, 2019, the judge granted mother's section 388 petition and gave her additional reunification services.

B. *The Dependency of the Youngest Child*

The next month, on May 4, 2019, mother gave birth to her third child. She admitted she had used methamphetamine from November 2018 to January 2019 while she was pregnant.

A few days later, the social worker and a drug and alcohol counselor interviewed her at her transitional home. She showed no visible signs of recent drug use. She said after testing positive and noticing she was going down a bad path, she checked herself into an inpatient substance abuse program and received services. She said she was no longer in a relationship with the father. The social worker assigned to the older children said mother had been progressing well in her case plan since January 2019.

Ten days later, the department filed a petition on the new child's behalf under section 300, subdivisions (b) and (j), alleging appellant had a substance abuse and general neglect history based on what happened in her other children's dependency cases. At the detention hearing, the juvenile court judge found a prima facie case and ordered the child detained in mother's care.

7

On June 7, 2019, mother advised the social worker she had been discharged from her transitional housing for not signing out, missing a house meeting, and coming home late. She and the infant had moved in with the maternal grandmother. She said she had been clean for approximately five months and was adamant about maintaining her sobriety. She also continued to visit the older children, and there were no reported problems at these visits.

On August 2, 2019, the department removed the child from mother's care after she tested positive twice for methamphetamine and missed other random drug test appointments. Mother admitted she had relapsed and expressed her remorse. The foster parents for the older children declined to have the new child placed with them, and he was placed in a separate foster care home.

On August 6, 2019, the department filed an amended section 300 petition on behalf of the new child under subdivisions (b), (g) and (j), based on mother's drug use, open dependency cases involving his siblings, and the fact that father's whereabouts were unknown. At the detention hearing, the judge found a prima facie case and ordered the child removed from mother's care. At the jurisdiction/disposition hearing, the court amended and sustained the allegations in the section 300 petition and granted services to mother.

C. *Setting of the Section 366.26 Hearings*

In their report submitted before the 18-month review hearing for the older siblings, the department recommended the judge terminate reunification services and set a section

8

366.26 hearing to establish a permanent plan of legal guardianship for the children. They reported mother was enrolled in an outpatient substance abuse program, had tested positive for amphetamine on July 11 and July 25, 2019, and failed to test on four other occasions.

The children were adjusting well in their foster care home and were bonded to the foster parents. However, the foster parents were not interested in providing long term care for the children through legal guardianship. The older child was found not to be on the autism spectrum, but he was severely delayed. The foster mother reported he had made good progress and was verbal and helpful around the house. The younger child had no developmental concerns.

The foster mother reported mother arrived late for visits and at times was attentive only to the younger child. At one visit, mother invited other children to a theme park with them and left the children unattended, leaving the foster mother to watch all of the children. She also brought other relatives to visits without telling the foster mother beforehand. When the social worker asked the older child whether he would like to reunify with mother, he said he liked his foster parents and wanted to stay with them.

Mother continued to struggle in her recovery. On October 30, 2019, the department reported mother was still in the outpatient program where she had been enrolled since June 19, 2019. She had tested negative for drugs twice in September, but the most recent test was faint and questionable. She failed to test twice in September 2019, and she missed several group sessions as well. She had been expected to complete

the program in October but was delayed due to her numerous absences and continued drug use. She tested positive for methamphetamine on October 22, 2019 and on November 4, 2019. She admitted to the social worker that she had relapsed on November 2 and again on November 16. She said she felt stressed about the children's dependency cases. She did test negative on November 6 and 26 and December 6, 2019. However, on December 20, 2019, she was terminated from the outpatient program for absences and was waiting to be reassessed for a residential program.

On January 22, 2020, the juvenile court judge terminated mother's reunification services for the two older children and set a section 366.26 hearing. The court reduced visitation to once a month for two hours.

In March 2020, the department recommended the judge terminate mother's reunification services for the youngest child and set a section 366.26 hearing to establish a plan of guardianship or adoption for him. They reported mother had been referred to another substance abuse treatment program, and the program intake coordinator advised the social worker on February 5, 2020, that mother had tested positive for amphetamine. When asked about the relapse, mother initially denied using any form of drugs and later said "she slept with someone, and that the methamphetamines was on the genitals and that is how it got in her system."

The department reported mother was on time to visits with the youngest child, and she engaged with him, fed him, and changed his diapers. The department reported the child was thriving and developing a strong and healthy bond with his caregiver, who was

committed to providing a stable home and a nurturing environment for him, as well as to adopt the child or become his legal guardian. On June 12, 2020, the social worker met with mother, who admitted her last relapse was in February 2020, which she blamed on a death in the family.

On July 13, 2020, mother filed a section 388 petition to change the order related to all three children by reinstating her reunification services and increasing the frequency of visits. She also asked for a bonding study. She said she had completed two of three services, recognized her mistakes and was trying to be independent for herself and the children. The judge denied the petition without a hearing, finding the request did not state new evidence or a change in circumstances.

A short time later the juvenile court judge delayed the section 366.26 hearing for the two older siblings because they were not a proper subject for adoption at the time and a potential legal guardian had not been identified. He ordered a permanent plan of placement in foster care with a continuing search for adoption. The judge ordered supervised visitation one time a month for two hours. On September 2, 2020, the department placed the older siblings in a concurrent home, and the children responded extremely well to the family.

On August 20, 2020, mother told the social worker she was living with the maternal grandfather and continued to attend her outpatient substance abuse program. She had begun the program on June 4 and participated once a week through an online video connection. She said she didn't test through the program but through the

department. The social worker noted mother had missed several testing appointments between February and August.

On August 26, 2020, at the six-month review hearing for the youngest child, the court terminated mother's reunification services and set a section 366.26 hearing. In a section 366.26 report, the department recommended terminating mother's parental rights over the child and implementing a plan of adoption. They reported the child had been with the same caregiver since October 2019 and the child and caregiver had bonded. The caregiver said she wanted to adopt the child and would allow mother and child to visit even after adoption because she believed it was important for the child to maintain a connection to the biological mother.

D. *Mother's Second Section 388 Petitions*

On November 23, 2020, mother filed separate section 388 petitions for each of the children asking the court to return them to her care, reinstate reunification services, or at least increase the frequency and duration of her visits.

In support of her petitions, she noted she completed an outpatient drug treatment program on October 7, 2020, and she also referred to her completion of other programs in March 2019. She said the proposed change was in the children's best interests because they were bonded to her and would benefit emotionally from increased time in her care, either as their primary caregiver or at longer, more frequent visits. She said the children enjoyed her visits with them, and it was in their best interest to prevent further delay in proceeding to the next step in the reunification process and returning them to her care and

custody.

On November 24, 2020, the court denied mother's section 388 petitions, finding mother hadn't provided new evidence or established there had been a change of circumstances. The court noted her assertions were conclusory and he hadn't established a prima facie case of changed circumstances.

Mother filed notices of appeal on December 29, 2020, on behalf of the older children, appealing "[a]ll findings and orders made by the court regarding Termination of Parental Rights and denial of Mother's 388 Petition including but not limited to 12/08/2020." On September 22, 2021, this court issued an opinion affirming the trial judge's orders.

E. *Mother's Third Section 388 Petition*

On January 15, 2021, the trial judge ordered visitation between mother and the two older children be one time per month for two hours, supervised. The court limited the parents' educational rights and appointed their caregivers as the educational rights holders for the children. On February 26, 2021, the trial judge continued the children in foster care and confirmed the future section 366.26 hearing. On April 27, 2021, the department reported the children had been placed in an adoptive home on September 2, 2020. The new caregivers had an approved adoption home study and ensured the children remained in communication with their family.

The department reported the children continued to have contact with mother and their younger sibling during visits. Mother had visits on January 10, February 21, and

13

March 7, 2021, and the younger child was present for two of those visits. At the January 2021 visit, mother decorated the room and celebrated her son's birthday. Mother would show up to the visits with food for the children and would interact with both of them. At the March 2021 visit, Mother ended the visit 30 minutes early and requested that visitation take place at a park the following month. The caregivers said the children didn't mention their mother between visits.

On May 13, 2021, mother filed a petition asking to change the February 2021 orders continuing the children in foster care and setting a section 366.26 hearing. She requested more liberalized visitation, a bonding study, and asked the court to reinstate family reunification services. Answering the question what had happened since the order that might change he judge's mind, she said she had a "[s]table home, part-time job working from home, [and was] currently enrolled [in an] aftercare program at cedar house." Mother also said the change of order would be in the children's best interests because it would allow her to "[e]xpress and show my love" and the children "love me as much as I love them."

Mother attached to her petition a photograph of herself with the two children, a letter of support from her landlord, and a March 23, 2021 letter from Cedar House confirming she had started their twice monthly aftercare program by attending an online meeting on March 10, 2021. She also attached a letter asking the judge to change his order and reinstitute reunification services because it's in the best interest of the children to "grow up with their real family." She expressed concern for her older son, saying the

14

caregivers showed preference for the daughter. She said she had visited regularly, decried the fact that she couldn't visit in person for 10 months because of the pandemic, and explained she had missed a few visits in late 2020 due to exposure to a family member who had tested positive for Covid-19.

On May 17, 2021, the trial judge denied the petition without a hearing, because mother had failed to state new evidence or a change of circumstances, and the proposed change did not promote the best interests of the children. The same day, at a hearing which mother did not attend, the trial judge found the children were adoptable and ordered adoption as the permanent plan and terminated parental rights.

Mother filed a timely notice of appeal.

## II

## ANALYSIS

Mother argues the juvenile court judge erred by summarily denying her section 388 petition. We review the judge's summary denial of a section 388 petition for abuse of discretion, asking whether the judge's decision exceeded the bounds of reason. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460.)

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child." (*In re S.J.* (2008)

15

167 Cal.App.4th 953, 959 [cleaned up].) The section 388 modification procedure is an "'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights," which is "vital to the *constitutionality* of our dependency scheme as a whole, and the termination statute, section 366.26, in particular." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528.)

To trigger the right to a hearing on a section 388 petition, the parent must demonstrate (1) a genuine change of circumstances or new evidence and (2) that revoking the previous order would be in the best interests of the children. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) A petition makes a prima facie showing if the allegations, liberally construed, show both changed circumstances and that the best interests of the child may be promoted by petitioner's proposed change of order. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431-432.)

Showing circumstances are in the process of changing is insufficient. (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.] 'Childhood does not wait for the parent to become adequate.'" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

To support her argument for changed circumstances, mother points to the fact that she had completed an outpatient substance abuse program, started an aftercare program, and had a stable home and a part-time online job. She attached a letter from Cedar House confirming she completed their outpatient program and had attended one online aftercare session on March 10, when they began offering those services again. It's unclear in the record on this appeal when mother completed the outpatient program. In her prior appeal, she said she completed the program on October 7, 2020. (*In re A.R.* (Sept. 22, 2021) E076353 and E076815 [2021 WL 4273004, *5].) Her petition relies on the fact that she started the aftercare program, not that she completed the outpatient program, and the focus of the letter from Cedar House appears to be to explain why she hadn't started an aftercare program until March, namely that they had offered one due to the pandemic. She also attached a letter from her landlord confirming she had rented a room since September 2020. She provided no information about her employment.

The strength of mother's petition bottoms on the fact that she began an aftercare program in March, because that's the only new development. She had started renting a room from her landlord when she filed her second changed-circumstances petition in November 2020. The trial judge ordered a section 366.26 hearing on February 26, 2021. About two weeks later, she attended an online aftercare session with Cedar House. While the effort to continue trying to get off drugs is commendable, mother remains at the beginning of a long and difficult process. She has a considerable history of drug abuse, including previous failed attempts to become sober during this dependency. She

17

submitted nothing to indicate she had continued to drug test before attending that session, nor anything to indicate she continued attending aftercare sessions after March 10. We can't conclude based on her long history of drug use that the trial judge abused his discretion in denying mother a hearing on her section 388 petition based on what amount to still initial steps toward recovery.

In short, the trial judge could reasonably conclude mother's petition showed, at best, that her circumstances were changing, not changed. That conclusion is especially strong in view of the fact mother had suffered a series of relapses throughout the later part of 2019 and early 2020 and then failed to test on a number of occasions in late 2020. (*In re A.S.*, *supra*, 180 Cal.App.4th at p. 358; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 ["a missed drug test, without adequate justification, is 'properly considered the equivalent of a positive test result'"].) It follows that the trial judge didn't err by determining mother hadn't met her burden of establishing a prima facie case of changed circumstances.

Mother argues that the bond between herself and her two older children is sufficiently strong to establish that allowing her another chance at reunification services is in the children's best interests. She also complains that the restrictions on in-person visitation caused by the COVID-19 pandemic impaired her ability to maintain a strong bond with the children. While we acknowledge the affection the children appear to have for their mother, and the difficulties the family faced due to the pandemic, by this stage of dependency proceedings, mother needed to establish she had addressed the problem that

18

led to the dependency in the first place—her persistent use of narcotics. The trial court reasonably concluded mother had not addressed those problems, and nothing mother argues on appeal leads us to question that conclusion.[2]

## III

## DISPOSITION

We affirm the orders of the juvenile court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH

J.

We concur:

MILLER

Acting P. J.

RAPHAEL

J.

---

[2] The department says it's not clear whether mother contests the findings and orders made at the section 366.26 hearing on their merits and they address those arguments "in an abundance of caution." We conclude mother has not challenged the findings and orders made at the section 366.26 hearing except to argue the orders should be reversed because denying her section 388 petition was erroneous. We therefore deny the department's request that we take judicial notice of certain proclamations and orders affecting the administration of juvenile dependency actions during the COVID-19 pandemic, which aren't relevant to any issue raised on appeal.